IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02111-CMA-KLM

FRANK VIGIL, JR.,

    Plaintiff,

v.

LOU ARCHULETA, Director of Prisons – Central Classification Committee,
JOHN CHAPDELAINE, Assistant Warden of Sterling – C.C.C.,
JEFF PETERSEN, Case Manager II – Central Classification Committee,
SCOTT STURGEON, Case Manager I – Central Classification Committee,
TINO HERRERA, Office of Inspector General – C.C.C., and
LARRY TURNER, Case Manager II – Central Classification Committee,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [#61][1] (the "Motion"). Plaintiff, who is proceeding pro se,[2] filed a Response [#64] in opposition to the Motion [#61]. Defendants did not file a Reply and the time for doing so

---

[1] "[#61]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a pro se litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935, F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

-1-

has elapsed. The Motion [#61] has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). The Court has reviewed the Motion [#61], Plaintiff's Response [#64], the entire case file, and the applicable law, and is sufficiently advised in the premises. The Court respectfully **recommends** that Motion [#61] be **DENIED**.

## I. Summary of the Case[3]

Plaintiff is an inmate in the Colorado Department of Corrections ("CDOC"). *See Second Am. Verified Compl.* [#14] at 2; *see also Motion* [#61] at 2 ¶ 1. On September 24, 2015, Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 in order to challenge the circumstances surrounding his attempted transfer to Oregon in 2012 and his actual transfer to Virginia in 2014. *Second Am. Verified Compl.* [#14] at 5, 14. Specifically, Plaintiff asserts that he was retaliated against by Defendants for exercising his First Amendment right to access the courts. *Id.*

Plaintiff filed his Second Amended Complaint [#14], which is now the operative

---

[3] The recitation of the case includes only undisputed facts. To the extent necessary, the Analysis section below discusses disputed facts and construes the evidence in a light most favorable to the nonmovant. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). Pursuant to 28 U.S.C. § 1746, Plaintiff swears to his Second Amended Complaint [#14] under penalty of perjury, and thus the document may be treated as an affidavit and used as evidence on summary judgment. *See Pacheco v. Timme*, No. 11-cv-02530-RM-KLM, 2014 WL 2442111, at *4 n.2 (D. Colo. May 30, 2014). However, Plaintiff must still provide more than conclusory or vague statements in order to create a genuine issue of material fact with respect to Defendants' otherwise undisputed facts. *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."); *see also Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture" is an insufficient basis for denial of summary judgment). The Court therefore does not include such statements in this recitation of facts, unless Plaintiff directs the Court's attention to evidence in the record that otherwise supports his "disagreements." Finally, the Court also notes that it disregards all statements consisting of legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the facts are undisputed, the Court refers only to the parties' briefing.

pleading, on December 28, 2015. Defendants filed Motions to Dismiss on March 29, 2017. *See* [#27, #38]. The Court ruled on the Motions to Dismiss, and all claims against Defendants Raemisch and Medina were dismissed. *See Order* [#52]. Pursuant to the same Order [#52], Plaintiff's only remaining claim is First Amendment retaliation against Defendants Lou Archuleta ("Archuleta"), John Chapdelaine ("Chapdelaine"), Jeff Petersen ("Petersen"), Scott Sturgeon ("Sturgeon"), Tino Herrera ("Herrera"), and Larry Turner ("Turner") in their individual capacities.[4] Defendants Archuleta, Chapdelaine, Petersen, Sturgeon, Herrera, and Turner were CDOC employees during all times relevant to the present lawsuit. *Second Am. Verified Compl.* [#14] at 2; *Motion* [#61] at 4 ¶¶ 12-13; *CDOC Notice of Protective Custody Decision* [#61-1] at 29. Discovery closed on November 20, 2017.

The remaining Defendants filed the Motion [#61] on January 20, 2018. Plaintiff filed his Response [#64] on February 26, 2018. Both Defendants and Plaintiff have attached evidence to the Motion and Response, respectively. Defendants have attached their Responses to Plaintiff's interrogatories and requests for admission, affidavits by Defendants Petersen and Sturgeon, a CDOC administrative regulation, and three documents from Plaintiff's record regarding his protective custody status and eventual out-of-state transfer. Plaintiff has attached four documents from his CDOC record, a Human Rights Watch article regarding the Red Onion State Prison (the facility he was transferred to in Virginia), and a sworn affidavit. Additionally, Plaintiff swears to his Second Amended Complaint [#14] under penalty of perjury and that document is therefore treated as an

---

[4] Another Defendant, Susan Butler, was dismissed for failure to serve. *See Order* [#48].

affidavit.  *See Pacheco*, 2014 WL 2442111, at *4 n.2.

Plaintiff had been incarcerated in Colorado for twelve years at the time when CDOC attempted to transfer Plaintiff to Oregon in 2012.  *Motion* [#61] at 2 ¶ 4; *Response* [#64] at 4 ¶ 1.  The attempted transfer occurred one month prior to trial in a lawsuit that Plaintiff had filed against CDOC in 2009.  *Response* [#62] at 4 ¶ 1; *Motion* [#61] at 10.  That transfer was unsuccessful because Plaintiff "made a scene" at Denver International Airport ("DIA") and was not allowed on the flight to Oregon.  *Motion* [#61] at 2 ¶¶ 5-6; *Response* [#64] at 3 ¶ 5.  Two years later, Plaintiff was transferred to the Red Onion State Prison in Virginia.  *Response* [#64] at 11; *Motion* [#61] at 4 ¶ 16.

### III.  Standards of Review

**A.    Federal Rule of Civil Procedure 56**

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*,

477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> > . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

**B.      Qualified Immunity**

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is "immunity from suit rather than a mere defense to liability" and should therefore be resolved at the earliest stage of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Resolving the question of immunity involves a two-pronged test: (1) a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right and (2) a court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that although a qualified immunity determination involves a two-part inquiry, the prongs may be reviewed in any order).

### IV.  Analysis

**A.      First Amendment Retaliation Claim**

Plaintiff's only remaining claim asserts First Amendment retaliation.  *Second Am. Verified Compl.* [#14] at 7.  Plaintiff alleges that Defendants retaliated against him for exercising his right to access the courts, first, by attempting to transfer him to Oregon one

month before his 2012 trial date, and second, by later transferring him out of Colorado to a hostile prison in order to punish him for his success in his earlier lawsuit. *Id.* at 7, 17-18.

Inmates are "'not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because [they] engage[ ] in protected activity.'" *Suarez v. Palomino*, 590 F. App'x 733, 736 (10th Cir. 2014) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). To state a First Amendment retaliation claim, Plaintiff "must [provide] facts indicating that: (1) he engaged in constitutionally protected activity; (2) the [D]efendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the [D]efendants' actions were substantially motivated by [P]laintiff's protected activity." *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08-cv-00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (addressing First Amendment retaliation claim) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). In connection with the third element, Plaintiff must demonstrate "that retaliation was the animus behind [ ] [D]efendants' actions, *i.e.*, [ ] [P]laintiff must show that 'but for' a desire to retaliate, [ ] [D]efendants would not have acted as they did." *Magluta*, 2009 WL 1504749, at *3 (citations omitted).

Whether Plaintiff engaged in a constitutionally protected activity when he accessed the courts in 2009 to bring a lawsuit against CDOC is not at issue at this time, as Defendants have not challenged this point in the Motion [#61]. *See Motion* [#61] at 9-10 n.1 ("Defendants dispute that Plaintiff had engaged in a constitutionally protected activity at the time he was transferred to Virginia in 2014. However, for the purposes of this motion, Defendants assume that engaging in litigation in 2009-2012 was sufficient to meet this prong given the allegations Plaintiff makes in the complaint."). Rather, Defendants

argue that Plaintiff is unable to establish that a constitutional right was violated because Plaintiff cannot prove elements (2) and (3) of a First Amendment retaliation claim. *Motion* [#61] at 6-11. More specifically, Defendants argue that Plaintiff has not demonstrated that four of them personally participated in deciding to transfer Plaintiff out-of-state, and that Plaintiff has not shown that any Defendant had retaliatory intent regarding Plaintiff's transfer. *Id.* Defendants contend that there is no genuine issue of material fact on these points and that they are entitled to summary judgment in their favor. *Id.* They also assert that they are entitled to qualified immunity because Plaintiff's failure to "sufficiently demonstrate that the Defendants retaliated against him" indicates that no constitutional right was violated. *Id.* at 12.

1. **Personal Participation of Defendants Chapdelaine, Petersen, Sturgeon, and Herrera**

Personal participation is an essential element in civil rights actions. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Personal participation in violating a plaintiff's constitutional rights must be shown with respect to each defendant, and such participation must be more than mere vicarious liability for the actions of inferiors.[5] *Iqbal*, 556 U.S. at 676. "[P]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him . . . [and] does not require direct participation because § 1983 states [that] any official who *causes* a citizen

---

[5] Defendants focus on the fact that § 1983 is not a vicarious liability statute. *See Motion* [#61] at 6. However, Plaintiff does not allege that Defendants Chapdelaine, Petersen, Sturgeon, and Herrera are liable through the actions of their inferiors; rather, he alleges that their decisions directly deprived him of constitutional rights. *See Response* [#64] at 3-4. Thus, the remainder of this Recommendation focuses on the personal participation that each Defendant allegedly had in Plaintiff's out-of-state transfer through his own decision-making authority.

to be deprived of her constitutional rights can . . . be held liable." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal citations omitted) (emphasis added).

Relevant to this case are the roles of CDOC's Central Classification Committee ("CCC") and Internal Classification Committee ("ICC") in out-of-state transfers. Both committees were created by an administrative regulation. *See CDOC Admin. Regulation 650-02* [#61-1] at 19. The CCC is "[a] committee at Central Office, chaired by the Assistant Director of Prison Operations or designee, representatives from Central Classification, Office of the Inspector General and the originating facility [whose] [d]uties include: finalizing offender classification instruments and status designations, determining final custody level, and making permanent facility assignments of offenders based on factors that may affect offender management and security." *Id.* The ICC is "[a] multidisciplinary committee within each respective facility chaired by the administrative head/designee . . . which is responsible for all facility internal classification and status proceedings, housing/cell assignments, code of penal discipline outcome management and other relevant internal offender management systems." *Id.* at 19-20. Also relevant to this case are the various housing placement options for inmates within CDOC. CDOC has general population and segregation units. *See CDOC Notice of Protective Custody Decision* [#61-1] at 29. CDOC also has "protective custody" — a housing placement for inmates who are at substantial risk of serious harm among the general population that is not meant to be a punitive placement like segregation. *CDOC Admin. Regulation 650-02* [#61-1] at 19. According to the Regulation, the CCC determines Protective Custody Classification Status; the ICC then conducts Protective Custody Reviews at 90-day intervals and recommends to the CCC whether the inmate should remain in protective custody or be placed elsewhere. *Id.* at 20,

23.

      Defendants Chapdelaine, Petersen, Sturgeon, and Herrera contend that they were members of the ICC, not of the CCC. *Motion* [#61] at 4 ¶¶ 12-13. Defendants believe that this precludes any genuine issue of material fact regarding their personal participation in the decision to transfer Plaintiff because their roles in the ICC present "no evidence that [the] decision to transfer [Plaintiff] out of state was made by [them]." *Motion* [#61] at 8; *see also Petersen Aff.* [#61-1] at 13-15; *see also Sturgeon Aff.* [#61-1] at 16-18. Specifically, Defendants assert that the ICC is responsible for "localized" matters, whereas the CCC oversees operations at the Central Office. *See Motion* [#61] at 8. However, as Plaintiff argues, based on the materials Defendants provide, the CCC and ICC seem to have significant overlap in various ways. *Response* [#64] at 3. For example, Larry Turner, a member of the ICC, is listed as the "Central Classification Liaison" on the Interstate Corrections Compact Referral recommending that Plaintiff be transferred out-of-state, which is a decision that Defendants contend is within the purview of the CCC. *See* [#61-1] at 30. Likewise, the CDOC Notice of Protective Custody Decision denying Plaintiff protective custody status, signed by Defendant Archuleta of the CCC, creates a factual issue about which Defendants made decisions regarding Plaintiff's placement. *See CDOC Notice of Protective Custody Decision* [#61-1] at 29. Below Defendant Archuleta's signature, the document reads "committee" and lists Defendants Chapdelaine, Petersen, Sturgeon, and Herrera. *Id.* Thus, there appears to be overlap between the committees because decisions that are allegedly made solely by the CCC reflect involvement of members of both committees.

      Additionally, even if Defendants Chapdelaine, Petersen, Sturgeon, and Herrera are

not formal members of the CCC, the evidence demonstrates that their actions nonetheless led to Plaintiff's transfer. Although Defendants contend that "there is no evidence that decision[s] to transfer an offender out of state w[ere] made" by Defendants Chapdelaine, Petersen, Sturgeon, and Herrera, *Motion* [#61] at 8, Plaintiff need only show that Defendants, members of the CCC or otherwise, caused his constitutional rights to be violated by "participat[ing] or acquiesc[ing]" in the transfer. *See Kite v. Kelley,* 546, F.2d 334, 337 (1976). As noted, Defendants Chapdelaine, Petersen, Sturgeon, and Herrera are listed as "committee" members on the Notice denying Plaintiff's placement into protective custody. *CDOC Notice of Protective Custody* [#61-1] at 29. Defendants state that it was necessary to transfer Plaintiff to Virginia because he could not be placed in protective custody. *Motion* [#61] at 4 ¶ 15. Thus, the decision to not place Plaintiff in protective custody led to Plaintiff's transfer to Virginia. This evidence creates a genuine issue of material fact because a fact finder could find a causal connection between the decision to not place Plaintiff in protective custody and the out-of-state transfer. *See Dodds*, 614 F.3d at 1195. Accordingly, there is a genuine issue of material fact regarding the personal participation of the four Defendants and the Court **recommends** that the Motion [#61] be **denied** in this respect.

  **2.** **Retaliatory Intent**

Next, Defendants argue that summary judgment should enter in their favor because Plaintiff cannot show that any Defendant decided to transfer Plaintiff in retaliation for Plaintiff's exercise of his right to access the courts. *Motion* [#61] at 9-11. "[P]laintiff must show that 'but for' a desire to retaliate, [ ] [D]efendants would not have acted as they did."

*See Magluta*, 2009 WL 1504749, at *3 (citations omitted). Defendants contend throughout the Motion [#61] that both the 2012 attempted transfer to Oregon and the 2014 successful transfer to Virginia were related to safety concerns regarding Plaintiff's custody issues with other inmates. *Motion* [#61] at 10-11. Plaintiff maintains that the 2012 attempted transfer was in retaliation for initiating the 2009 litigation against the CDOC, and that the 2014 transfer was in retaliation for his success in the 2009 litigation. *Response* [#64] at 5.

The courts have recognized that, in retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Smith v. Maschner*, 899 F.2d 940, 949 (1990) (denying defendants' motion for summary judgment because the inmate's evidence could support a jury finding retaliation based on the "only means available to him — circumstantial evidence of the suspicious timing of his discipline, [and] coincidental transfers of his witnesses and assistants"). With respect to the 2012 attempted transfer, Plaintiff alleged in his Second Amended Complaint that prior to the 2012 attempted transfer, CDOC had never attempted to transfer Plaintiff out-of-state, and the attempted transfer took place "out of nowhere" within one month of a set trial date. *Second Am. Verified Compl.* [#14] at 7 ¶¶ 1-3. Defendants state in their Motion [#61] that "the evidentiary record demonstrates that the attempted transfer of Plaintiff to Oregon in 2012 . . . had no causal connection to the lawsuit he filed in 2009 . . . [and] had everything to do with his safety and security"; however, they do not cite or provide any evidence in the record that shows Plaintiff had custody issues prior to the 2012 attempted transfer. *Motion* [#61] at 10. Given that "suspicious timing" may be used as evidence of retaliatory motive, Defendants have not met their burden of showing an absence of a genuine issue of

material fact on this issue.  *See Maschner*, 899 F.2d at 949.

With respect to Plaintiff's 2014 transfer to Virginia, Plaintiff asserts that Defendants' reasons given for the 2014 transfer were pretextual and that the real intent behind the transfer was to retaliate against him for his success in his lawsuit by transferring him to a prison notorious for poor treatment of inmates.  *See Second Am. Verified Compl.* [#14] at 13 ¶ 26; *see also Vigil Aff.* [#64] at 18-19 ¶ 3.  Defendants contend that Plaintiff had to be transferred out-of-state because his custody issues with inmates in protective custody and general population gave CDOC no other choice.  *See Motion* [#61] at 4 ¶ 15.  However, there are genuine issues of material fact regarding whether Plaintiff had such custody issues. After Plaintiff's failed attempted transfer in 2012, Plaintiff was placed briefly into general population and then transferred to segregation to await a protective custody status interview.  *Second Am. Verified Compl.* [#14] at 9, ¶ 15; *CDOC Notice of Protective Custody Decision* [#61-1] at 29.  Defendants recorded in the Notice of Protective Custody Decision that during the interview, Plaintiff said that he "did not feel that he would be safe in general population and the committee concurs."  *CDOC Notice of Protective Custody Decision* [#61-1] at 29.  Defendants further recorded that "[Plaintiff] has a custody issue with an offender assigned to protective custody so that it is not an option at this time."  *Id.*  Plaintiff was then kept in segregation until his out-of-state transfer.  *Id.*  Plaintiff asserts that the information contained in the report regarding Plaintiff's statements during the interview is false and that Plaintiff had in fact "demanded to be immediately allowed out of seg[regation] and into [general population]."  *Second Am. Verified Compl.* [#14] at 10 ¶ 17.[6]

---

[6] The Court may treat a pro se litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury.  *Hall*, 935 F.2d at 1111 (citing

Plaintiff further asserts that he had no custody issues in general population. *Vigil Aff.* [#64] at 18-19 ¶ 3. Therefore, Defendants' argument that there is no genuine issue of material fact regarding the custody issues — their stated reason for the out-of-state transfer — fails. Given these discrepancies in the evidence submitted by both parties regarding Plaintiff's custody issues, there is a genuine issue of material fact as to whether Plaintiff's transfer was for a legitimate purpose due to significant custody issues from 2012-14 in general population. Accordingly, the Court **recommends** that the Motion [#61] be **denied** with respect to Defendants' retaliatory intent.

Plaintiff has cited sufficient evidence that raises genuine issues of material fact as to whether Defendants Petersen, Sturgeon, Chapdelaine, and Herrera personally participated in transferring Plaintiff to Virginia, and whether the transfer was motivated by retaliation. Therefore, there are genuine issues of material fact regarding whether Plaintiff's constitutional right to be free of retaliation was violated. Accordingly, the first prong of the qualified immunity test is met because "the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *See Pearson*, 555 U.S. at 232.

**B.    Prong Two of the Qualified Immunity Test Has Been Decided in This Case**

The second prong of qualified immunity was discussed at length in the Recommendation [#47] regarding Motions to Dismiss [#27] and [#38]. The Order [#52] adopting in part and rejecting in part Recommendation [#47] adopted in full the section on qualified immunity. The Court held that "Plaintiff's First Amendment right to be free from retaliation was clearly established at the time of the alleged violation." Whether a

---

*Jaxon*, 773 F.2d at 1139 n.1 (10th Cir. 1985) (citation omitted)).

constitutional right was clearly established is a question of law and need not be revisited now, or at any time moving forward in this litigation, as it is the law of the case. *See Forsyth*, 472 U.S. at 528 (holding that "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions" is "a question of law"); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) (stating that the law of the case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#61] be **DENIED.**

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 6, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge